**MOONEY AIRCRAFT, INC., Appellant,**

v.

**Dennis J. DONNELLY, Administrator of
the Estate of Joseph M. Donnelly,
Deceased, Appellee.**

No. 24507.

United States Court of Appeals
Fifth Circuit.

Sept. 18, 1968.

Rehearing En Banc Denied Nov. 8, 1968.

James W. Wilson, Austin, Tex., for appellant.

Franklin S. Spears, San Antonio, Tex., for appellee.

Before RIVES, BELL and GOLDBERG, Circuit Judges.

GOLDBERG, Circuit Judge:

State statutes authorizing service of process on corporations far from home have filled the reporter system with a cornucopia of decisions. Of these decisions, Mooney Aircraft, Inc., has had its plethoric share. In Delray Beach Aviation Corp. v. Mooney Aircraft, 5 Cir. 1964, 332 F.2d 135, cert. den., 379 U.S. 915, 85 S.Ct. 262, 13 L.Ed.2d 185, we inspected the Florida long-arm service of process statute and found that it "reaches as far as Texas." 332 F.2d at 137. Here, however, we measure the Pennsylvania long-arm service of process and find that Mooney lies outside its reach.

On June 23, 1962, Joseph M. Donnelly, a resident of Pennsylvania, died in the crash of his private aircraft near Meadowville, Virginia. In May, 1963, Dennis J. Donnelly, Administrator of the Estate of Joseph M. Donnelly, filed suit for negligence and breach of warranty against the manufacturer of the aircraft, Mooney Aircraft, a Texas corporation. The suit was filed in the United States District Court for the Western District of Pennsylvania. Although notified of the suit, Mooney chose not to enter the district court proceedings, and the administrator was subsequently awarded a default judgment in the amount of $175,000.00.

On July 1, 1964, the default judgment against Mooney was registered in the District Court for the Western District of Texas pursuant to 28 U.S.C. § 1963.[1] Mooney then filed a Motion to Quash Registration and to Quash Execution, contending that this judgment had not been brought under the jurisdiction of the Pennsylvania district court. On March 16, 1966, the Texas district court denied Mooney's motion, which action precipitated this appeal.

As provided in Fed.R.Civ.P. 4(d) (3) and (7),[2] the Administrator elected to serve Mooney through procedures prescribed by Pennsylvania law. Service of process was initially attempted on June 11, 1963, by personal service upon Charles E. Campbell, a Pennsylvania distributor of aircraft manufactured by Mooney. In addition, on July 5, 1963, substituted

---

1. § 1963. Registration in other districts
A judgment in an action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.
A certified copy of the satisfaction of any judgment in whole or in part may be registered in like manner in any district in which the judgment is a lien. June 25, 1948, c. 646, 62 Stat. 958; Aug. 23, 1954, c. 837, 68 Stat. 772; July 7, 1958, Pub.L. 85–508, § 12(o), 72 Stat. 349.

2. Rule 4. Process
\*      \*      \*      \*      \*
(d) Summons: Personal Service. The summons and complaint shall be served together. The plaintiff shall furnish the person making service with such copies as are necessary. Service shall be made as follows:
\*      \*      \*      \*      \*

(3) Upon a domestic or foreign corporation or upon a partnership or other unincorporated association which is subject to suit under a common name, by delivering a copy of the summons of the complaint to an officer, a managing or general agent, or to any other agent authorized by appointment or by law to receive service of process and, if the agent is one authorized by statute to receive service and the statute so requires, by also mailing a copy to the defendant.

\*      \*      \*      \*      \*

(7) Upon a defendant of any class referred to in paragraph (1) or (3) of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.

\*      \*      \*      \*      \*

service was made on the Secretary of the Commonwealth of Pennsylvania by certified mail. Mooney does not challenge either attempt on procedural technicalities. Rather, Mooney contends that neither attempt at service was authorized by Pennsylvania law.

We need not search far for an authoritative commentary of Pennsylvania law as it relates to the issues at bar. On November 14, 1967, the Pennsylvania Supreme Court handed down yet another Mooney long-arm decision, Myers v. Mooney Aircraft, 1967, 429 Pa. 177, 240 A.2d 505, involving two similar actions in the state courts caused by the crash of another of Mooney's airplanes. In one of the actions, instituted by the executor of the estate of Helen E. Myers, the pilot, Mooney filed preliminary objections denying personal jurisdiction (over two and one-half years after service was made); the Court of Common Pleas overruled such objections; and Mooney appealed to the Pennsylvania Supreme Court. In the other action, instituted by the executor of the estate of Maurice F. Wilhere, the passenger accompanying Myers, Mooney filed no appearance or answer; a default judgment was taken by the plaintiff; Mooney, one year later, filed a petition to strike off the default judgment for lack of personal jurisdiction; the court denied such motion; and Mooney appealed. The Myers and Wilhere cases were consolidated on appeal. *In both actions the record before the Pennsylvania Supreme Court consisted solely of certain depositions, affidavits, and exhibits which had been introduced in the Donnelly controversy at bar.* Therefore, our analysis of both attempts by the Administrator to serve Mooney will be founded upon the respective statutes as interpreted by the Pennsylvania opinion.

## I. Substituted Service on the Secretary of the Commonwealth, July 5, 1963

Section 1011, subd. B of the Pennsylvania Business Corporation law of 1933, 15 P.S. § 2852–1011, subd. B, authorizes the Secretary of the Commonwealth to accept substituted service of process for "any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State." However, on July 5, 1963, when the administrator's attempt was made, the availability of such service was severely restricted in that the statute allowed substituted service only in an "action arising out of acts or omissions of such corporation within this Commonwealth." [3] (An amendment to the statute, which became effective August 13, 1963, omitted the "acts or omissions" requirement and prescribed substituted service as now authorized "in any action arising within this Commonwealth," [4] but, as we shall discuss, such amendment is inapplicable to the case at bar.)

The Pennsylvania court in *Myers,* as well as the district court below, found affirmatively that Mooney, which had obtained no certificate of authority from the Department of State, was "doing business" as that term was used in Section 1011, subd. B and defined in Section

---

3. § 2852–1011, subd. B (before August 13, 1963 amendment):

"Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process *in any action arising out of acts or omissions of such corporation within this Commonwealth.* * * *" [Emphasis added.]

4. The statute now provides in relevant part:

"B. Any foreign business corporation which shall have done any business in this Commonwealth, without procuring a certificate of authority to do so from the Department of State, shall be conclusively presumed to have designated the Secretary of the Commonwealth as its true and lawful attorney authorized to accept, on its behalf, service of process *in any action arising within this Commonwealth.* * * *" [Emphasis added.]

1011, subd. C.[5] Mooney does not contest this finding on appeal. Instead, it stresses that none of the "acts or omissions" which precipitated this suit occurred in Pennsylvania and, therefore, that the substituted service on July 5, 1963, was void for lack of statutory authority. The district court below accepted Mooney's defense, relying on Rufo v. Bastian-Blessing Company, 1961, 405 Pa. 12, 173 A.2d 123, in which the Pennsylvania Supreme Court held:

> "The question is not where the injury occurred or where the cause of action arose; where did the company's negligent acts or omissions take place?" 173 A.2d at 127.

See also Frisch v. Alexson Equipment Corp., 1966, 423 Pa. 247, 224 A.2d 183, 187.

■ In *Myers* the Pennsylvania Supreme Court acknowledged the *Rufo* holding as the law before August 13, 1963 (see 240 A.2d at 508 n. 5) even though it ruled that service *after* that date would be judged by the more pervasive amendment. In the case at bar no service was attempted after August 13, 1963, and so the *Myers* refinement is inapplicable. We thus affirm that portion of the district court's opinion which denied the validity of the July 5 substituted service.

II. Personal Service Upon Charles E. Campbell, June 11, 1963

Rule 2180(a) (2) of the Pennsylvania Rules of Civil Procedure, 12 P.S. Appendix authorizes service of process upon a corporation by personal service upon an agent or person who, for the time being, is in charge of an office or usual place of business of that corporation.[6] The district court in the case at bar held that the June 11, 1963, personal service upon Charles E. Campbell satisfied the requirements of Rule 2180(a) (2). We must re-examine that finding in light of the express holding by the Pennsylvania Supreme Court that Campbell's counterpart in the *Myers* litigation, Henry S. Weber, was not an agent of Mooney but rather was an independent contractor. 240 A.2d at 512.

We turn first to the Pennsylvania decision, in which the relationship between Mooney and Weber was set out as follows:

> "Summarized, the court below found that: Mooney manufactures aircraft and aircraft parts at Kerrville, Texas, and with each new aircraft furnishes a written warranty for replacement of defective parts; Mooney in Pennsylvania had two distributors each of whom had a distinct and separate area of endeavor and one of whom was Henry Weber in Lancaster; Weber, as a Mooney distributor, had certain definite obligations such as (a) providing warranty service free of charge to Pennsylvania purchasers of Mooney products, (b) advertising himself as a Mooney representative by a large sign 'Mooney' above his place of business

---

5. The original statute, which was not altered in the August 13, 1963, amendment so as to affect this case, read as follows:

 "C. For the purposes of this section, the entry of any corporation into this Commonwealth for the doing of a series of similar acts for the purpose of thereby realizing pecuniary benefit or otherwise accomplishing an object, or doing a single act in this Commonwealth for such purpose with the intention of thereby initiating a series of such acts, shall constitute 'doing business.'"

6. Rule 2180. Service of Process.

 (a) Service of process within the county in which the action is instituted shall be made upon a corporation or similar entity by the sheriff of that county by handing a [true and attested] copy thereof, attested by the prothonotary or sheriff or certified by the plaintiff to be a true copy,

 \*   \*   \*   \*   \*

 (2) to an agent or person for the time being in charge of, and only at, any office or usual place of business of the corporation or similar entity; or

 \*   \*   \*   \*   \*

 by delivering an attested or certified copy thereof in the manner provided by law to a statutory agent authorized to receive service of process.

and displaying 'Mooney' signs and displays, (c) soliciting and appointing dealers to sell Mooney products, (d) maintaining adequate sales facilities, sales staff, etc. to advertise and promote Mooney sales in his territory, (e) owning at least one Mooney demonstrator aircraft of each current model, (f) purchasing at least four new aircraft from Mooney each year and (g) maintaining a comfortable pilot lounge and private sales office identified by a lighted 'Mooney' sign; between 1958 and 1964, Mooney products sales in Pennsylvania totalled $2,274,000 of which Weber sold $1,416,000; Mooney employs regional sales managers who make numerous trips into Pennsylvania and makes available to its two Pennsylvania distributors the assistance of its experts in various fields; since 1959 Weber has dealt exclusively in Mooney aircraft; Mooney assists its distributors in financing aircraft purchases from it by making known the availability of certain banks who would finance Mooney aircraft. Such, in capsule form, constitutes the extent of Mooney's contacts in Pennsylvania." 240 A.2d at 510.

The Court then discussed the concept of "doing business" under Sections 1011, subds. B and C, after which it returned to a consideration of the service upon Weber. In words that do not need interpretive commentary, the Court held that Weber's relationship with Mooney did not create 2180 agency:

> "Service of process in both actions was made under Rule 2180(a) (2) by handing a copy of the process to Henry Weber as 'an agent or person for the time being in charge of, and only at, any office or usual place of business of the corporation or similar entity'.

> Initially, we express our agreement with the statement of the court below that: 'Plaintiff's service upon Weber as the person in charge of [Mooney's] usual place of business presumes that [Mooney] was "doing business" in Pennsylvania'. We have already determined that Mooney, under the broad and expanded legislative definition of what constitutes 'doing business', was engaged in 'doing business' in Pennsylvania. However, it does not follow from that conclusion that service under Rule 2180(a) (2) was valid.

> Rule 2180(a) (2) renders valid a service of process upon a corporation where the process is handed to (a) an agent or person who, for the time being, is in charge of (b) and office or usual place of business of the corporation. The fact that the corporation is a foreign corporation which is 'doing business' in Pennsylvania does not render service of process valid under Rule 2180(a) (2) unless that Rule is strictly complied with.

> The relationship between Mooney and Weber is not that of principal and agent but that of independent contractee and contractor. There is no evidence that Mooney had an 'office' or 'usual place of business' in Lancaster: the office was that of Weber and not Mooney and the person served was neither an agent of Mooney nor a person in charge of any office or usual place of business of Mooney. See: Swavely v. Vandergrift et al., 397 Pa. 281, 154 A.2d 779 (1959) affirming 19 Pa.Dist. & Co.R.2d 153, 155 (1958)." 240 A.2d at 512.

The administrator recognizes the above language to be a sizeable obstacle in the path of affirmance and offers the following four arguments to surmount it: (1) There are critical dissimilarities between the facts before us and those before the Pennsylvania Supreme Court. (2) Because the determination of agency is factual, our Court should be bound more by the findings of the district court below than by those of a state appellate court. (3) The interpretation of Rule 2180(a) (2) by the Pennsylvania Supreme Court was dicta because that court granted jurisdiction over Mooney despite its invalidation of the attempted personal service. (4) Because the Pennsylvania Supreme Court granted jurisdiction over Mooney, our Court should do likewise under the "out-

come-determinative" view of Erie v. Tompkins. Notwithstanding these arguments, which we consider below, we find the *Myers* obstacle to be insurmountable.

(1) *Factual dissimilarities.* Despite the Pennsylvania Supreme Court's recital that it had considered "this voluminous record" and despite that Court's admission that the record before it was the record in the case before us, the administrator attempts to convince us that he should win on the facts. The express findings of the district court below, however, parallel in relevant fact those quoted above from the Pennsylvania Supreme Court. The administrator attempts to distinguish Weber's relationship by his partial ownership of Mooney's stock and his one-time position on Mooney's board of directors. We do not find such distinguishing fact to compel a conclusion that Weber was *less* an agent of Mooney than was Campbell. Moreover, we have read the few items in our appellate record which were not before the Pennsylvania Supreme Court and have found them not as "damaging" to Mooney as the administrator would have us believe.

■■■ (2) *Determination of agency under Pennsylvania law.* The administrator attempts to convince us that the only difference between holdings of the district court below and the Pennsylvania Supreme Court are purely factual differences—even though the two courts reached virtual agreement on the controlling factual data. We find the only difference between these two decisions to be one of statutory interpretation, i. e., the satisfaction of the "agency" and "usual place of business" requirements under Rule 2180(a) (2) of the Pennsylvania Rules of Civil Procedure. We look primarily to state decisions for such interpretations, see Massengill v. Campbell, 5 Cir. 1968, 391 F.2d 233, and Delray Beach Aviation Corp. v. Mooney Aircraft, Inc., supra, and the highest court in Pennsylvania has told us that Rule 2180 (a) (2) does not have the long-arm girth to encompass Mooney.

■ (3) *The Pennsylvania holding as dicta.* "The obligation to accept local law extends not merely to definitive decisions, but to considered dicta as well." 1A Moore, Federal Practice ¶ 0.307 [2], at 3312, as quoted and followed in Doucet v. Middleton, 5 Cir. 1964, 328 F.2d 97, 102. We do not deem Pennsylvania Supreme Court dicta to be unhallowed. The seals of specific decision are not the sine qua non of a legal proposition.

(4) *Outcome determination.* Although the Pennsylvania Supreme Court found the attempted service under Rule 2180 to be invalid, it maintained jurisdiction over Mooney, invoking principles of waiver and laches. We quote that Court's conclusion in full:

"The appropriate method of service upon Mooney was under Section 1011, subd. B, supra, and to the extent service in that manner was made in the Myers action such service was proper. Service of process under Rule 2180 (a) (2) was, under the instant factual situation, invalid and such service in both the Wilhere and Myers actions was improper and, ordinarily, would be set aside.

However, in the Wilhere action, where Mooney filed a petition to strike off the default judgment, Mooney by its inaction and resort to an improper procedure has forfeited its right to question the manner of service. In order to sustain its position as to the impropriety of the service of process Mooney must resort to facts dehors the record. We agree with the court below that such method of attack is not available through the medium of Mooney's petition to strike off this judgment.

Even if we were to consider the instant petition as a petition to open this judgment or in the nature of preliminary objections we cannot, under the facts, grant the relief Mooney requests. Mooney filed neither appearance, answer nor preliminary objections and waited more than sixteen months before taking any steps to attack the default judgment. We

agree with the court below that Mooney took a 'dangerous risk' and 'this risk has been deliberately taken with unfortunate results to [Mooney] and, as a consequence, [Mooney] is not entitled to any consideration. * * * '

In summary: (1) in the Myers action, service of process was properly made upon Mooney under Section 1011, subd. B; (2) in the Wilhere action, service of process was improperly made upon Mooney under Pa.R.C.P. 2180(a) (2); (3) that the infirmity of service of process in the Wilhere action cannot now be attacked by a petition to strike off the default judgment and the failure of Mooney to exercise even ordinary diligence precludes such an attack in any other manner and whatever rights Mooney might have had to attack this judgment have been lost by its own carelessness and the passage of time.

Order entered in the Myers action is affirmed and judgment entered in the Wilhere action is affirmed."

■ We view the above language as rendering Mooney subject to the jurisdiction of the Pennsylvania courts because of its improper entrance into the state proceedings. To the contrary, Mooney's method of challenging the federal proceedings was beyond question. Mooney made no entrance during the extent of litigation in Pennsylvania and entered in due course when the locus of action moved to Texas. If we were to accept the administrator's argument here, we would deny Mooney's right to remain silent and would make a mockery of jurisdictional safeguards. This we will not do. Inaction in response to non-authorized action cannot render such action valid. The doctrine of laches has never been jurisdiction creating.

■ The administrator, who reads *Myers* as offering the federal courts "one loaf," argues that we cannot accept the part relating to agency and reject the part relating to waiver and laches. On the contrary, we see two loaves, one being digestible and the other indigestible by

our federal system. Cf. Hanna v. Plumer, 1964, 380 U.S. 460, 85 S.Ct. 1136, 14 L.Ed.2d 8. We accept the Pennsylvania Supreme Court's analysis of the state's long-arm statute by authority of Federal Rule 4(d) (7). No authority, however, demands that we regulate our court appearances and filings by means of sanctions utilized in Pennsylvania. In fact, we must repair to our own federal standards, which are so ably stated in Williams v. Capital Transit Co., 1954, 94 U.S.App.D.C. 221, 215 F.2d 487, 489–490:

"The plaintiff insists that because the motion by Douglas was not filed until some three years after the purported service, it was not 'timely.' But the filing of the motion here was timely.

We approve the trial court's ruling. Civil Procedure Rule 4(d) (1) should be liberally construed, Rovinski v. Rowe, 6 Cir. 1942, 131 F.2d 687, 689. However service not completed at the defendant's usual place of abode is ineffective. First Nat. Bank & Trust Co. of Tulsa v. Ingerton, 10 Cir., 1953, 207 F.2d 793; Berryhill v. Sepp, 1909, 106 Minn. 458, 119 N.W. 404, 21 L.R.A., N.S., 344. *If in fact there were no service, the proceedings as to Douglas were void from the very outset.* Earle v. McVeigh, 1875, 91 U.S. 503, 23 L. Ed. 398. *No lapse of time can serve the plaintiff.* The lack of jurisdiction of the court cannot be cured by the running of months or even years where the court had no jurisdiction to proceed against Douglas in the first place. Wise v. Herzog, 1940, 72 App. D.C. 335, 114 F.2d 486 and cases cited." [Emphasis added.]

See also Poole v. Lykes Bros. Steamship Co., 5 Cir. 1960, 273 F.2d 423; Mahoney v. Northwestern Bell Tel. Co., 8 Cir. 1967, 377 F.2d 549; Martens v. Winder, 9 Cir. 1965, 341 F.2d 197, 200, cert. den., 382 U.S. 937, 86 S.Ct. 391, 15 L.Ed.2d 349; Berlanti Construction Co. v. Republic of Cuba, S.D.N.Y.1960, 190 F.Supp. 126. Cf. Hanes Supply Co. v. Valley Evaporating Co., 5 Cir. 1958, 261 F.2d 29, 34.

In a concluding argument the administrator casts ominous forebodings against allowing defendants to stand passive while judgments are being rendered against them. Such argument does not convince us that Mooney, by risking default judgment, should lose its legal rights. Our role is not to reward legal courage or to penalize legal cowardice. We have statutes to construe. In the case at bar we find that Pennsylvania's long-arm statutes were not satisfied and therefore, that Mooney's Motion to Quash Registration and to Quash Execution should have been granted.

Reversed.

## ON PETITION FOR REHEARING EN BANC

PER CURIAM:

The Petition for Rehearing is denied and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Rule 35 Federal Rules of Appellate Procedure; Local Fifth Circuit Rule 12) the Petition for Rehearing En Banc is denied.